The next matter called is Agenda No. 2, Docket No. 123626, McIntosh v. Walgreens Boots Alliance. Mr. Sammons, when you're ready. Good morning and thank you, Your Honors, and may it please the Court. I'm David Sammons on behalf of the defendant, Walgreens. This appeal concerns the voluntary payment doctrine, which this Court has repeatedly characterized as a universally recognized rule, and which this Court has consistently applied to claims for improperly collected taxes since 1902. Under this rule, a plaintiff that voluntarily pays money under a claim of right with full knowledge of the facts may not recover the payment solely because the claim itself was unlawful. Instead, such payment is recoverable only when it was not truly voluntary, specifically where it was the result of duress, a reasonable mistake of fact, or fraud. In the context of retail sales, that means that if the retailer informs the consumer through a receipt or otherwise that it is applying the tax to the items being purchased, the consumer cannot later sue to recover the tax unless he or she objected at the time of the transaction. And this Court has emphasized the important public services, excuse me, public policies served by the voluntary payment doctrine. And in particular, those entail the ensuring of the stability and finality of payments in taxing regimes and the avoiding of unnecessary litigation. Now here, Walgreens mistakenly collected Chicago's five-cent bottled water tax by applying it to bottles of carbonated or flavored water for a period of time, but it disclosed the tax as a separate item on the receipt and it remitted the amounts collected to the taxing authority pursuant to the city's remittance procedures. Plaintiffs did not object to the tax at the time of the transaction, but brought this ICFA class action months later after seeing news reports that Walgreens had misapplied the tax. As this case comes to this Court, we think there are two key issues presented. The first involves plaintiff's argument that all ICFA claims are categorically immune from the voluntary payment defense. Even the Court of Appeals did not, in this case, did not accept that notion. And it suffers, I think, from some fundamental problems, and there are two in particular. There are two principles that this Court's cases make abundantly clear that I think make established that the voluntary payment doctrine applies to ICFA claims in the same way it does to all others. And those principles are, first, this recognition that the voluntary payment doctrine is a universally recognized rule that applies across all types of alleged illegality concerning the underlying claim. This Court said that in Illinois Glass in 1902, and it said it again in front and in many other cases that the voluntary payment doctrine is not a narrowly focused principle, but it is a broad common law rule that applies across the board and is universally accepted. The second is, I think, even more fundamental in this context. And that is that where a taxpayer has paid a tax voluntarily but erroneously, there is no claim for a tax refund unless there is a specific statute or ordinance passed by the legislature to allow a tax refund in those circumstances. And ICFA cannot be considered such a provision for a tax refund process. ICFA applies across, you know, all types of fraud and deceptive practices. It's not focused on tax refunds. And the public policies that underlie the voluntary payment doctrine apply with full force in this context. Mr. Salmon, there are exceptions to the voluntary payment doctrine. Yes, that's correct. And one of them is the Cary case? I'm sorry, which case? Cary. Yes, ma'am. I'm trying to think of that case. So the exceptions this Court has recognized are where there's a mistake of fact, where there's duress, or where there's fraud, and has also allowed claims for tax recovery where there was unjust enrichment, where the tax was not remitted. But whereas here the tax has been remitted, the Court has always said that tax refund claims like this are not available. Cary, was medical appliances necessities? I'm sorry, Your Honor. I'll have to look at that. I don't recall it here. I mean, there's no claim I think that there's – I'm sorry. I think that's a duress case now that's coming back to me. I think the idea is that in those instances you might fit within the duress exception. But there's no claim under duress here. The only claim that the plaintiff has made here is one that this broad claim I was just addressing, that ICVA itself is immune from voluntary payment defenses, which we think is wrong for the reasons I articulated. And the second is that the fraud exception was satisfied here by the very act of collecting the tax and notifying the consumer that the tax was being assessed. And that can't be right. That can't constitute the basis for a fraud because the premise of the voluntary payment doctrine is that there is an unlawful collection of tax or an unlawful payment. And the law encourages and wants the notification to the payer or the consumer here of the tax so that it has the opportunity in real time to raise an objection. And that's the point. The real focus of all of the exceptions to the voluntary payment doctrine is not about the unlawfulness of the claim for payment. It's about the voluntariness of the payment on the part of the payer. And when the payer possesses the facts that it would need to raise a timely objection, it must do so unless there's some type of duress or other reason that would justify not doing so. So what each of those exceptions tries to discern, to put it another way, is where is it appropriate to excuse the payer or the taxpayer from raising a timely objection to the tax and avoiding all the costs related to the litigation that's going to follow when they have all the facts they need in the moment to raise that concern. And again, we think the fundamental error made by the Court of Appeal below is in adopting a theory, an interpretation of the fraud exception that makes the voluntary payment doctrine at war with itself. It would cause the exception to swallow the rule in all cases of improperly collected taxes because every time there's going to be an unlawful tax that has been communicated to the payer. That's the premise of the voluntary payment doctrine. And if that communication in and of itself provides an exception to it, at that point the doctrine and the defense makes no sense. There's another problem, I think, with that theory. And that is that there is, in fact, nothing deceitful about providing the plaintiff with a receipt that accurately reflected what Walgreens was doing with the plaintiff's money. Here there was a separate item that indicated the bottled water tax, and Walgreens remitted the tax to the taxing authority pursuant to the processes the city provided for doing so. And so there's nothing mistaken or false or deceptive about the indication on the receipt that the tax was being imposed. It was imposed, and it was remitted, and it informed the consumer that that was what was happening with his money. And that is what enables the consumer to say, I object, I don't think this tax applies. Again, ICFA was never intended to be an end run around the limited statutory processes for obtaining tax refunds. This court, again, has long made clear that the legislature and taxing authority, and not civil litigants in the courts, are the proper entities to supervise the tax collection efforts. And the law limits the processes by which taxpayers, in certain circumstances, may sue to obtain a refund of voluntarily but erroneously paid taxes. It has done so precisely because those taxing regimes and public services, and the public services that depend on those taxing regimes, require stability and finality. The voluntary payment doctrine has served these important objectives well for more than a century, and it should continue to do so, and the decision below would preclude that from happening and instead institute what is effectively a per se rule of liability for every improperly collected tax in the retail tax setting. For these reasons, the decision of the Court of Appeal should be reversed. If the court has no questions at this time, I will make additional points in rebuttal. Thank you. Mr. McLaughlin. May it please the Court. My name is Todd McLaughlin. I represent the plaintiff, Destin McIntosh. I'm going to start where my opponent ended. He just stated that there was nothing deceitful about the conduct that occurred. That's not the issue. That's a merit issue of whether or not fraud or deceptive conduct was engaged in by Walgreens. That's something that has been pled and something that we need to prove. The issue here is whether the voluntary payment doctrine can serve as a bar, basically at the courthouse door, at the pleading stage, to prevent a plaintiff from even making the attempt to prove that he has been defrauded. Counsel also characterized this as a mistake. That's been used, I believe, in their brief. They used the M word, mistake, 57 times in their Supreme Court brief. The word mistake appears zero times in plaintiff's complaint. The allegation is not that Walgreens made the mistake. The allegation is that Walgreens charged the Chicago Bottle Water Tax when it knew that it was not able to, on plaintiff's purchase, charged the plaintiff that amount and collected it from them. That conduct, plaintiff alleges, is fraudulent. Did Walgreens, is it alleged Walgreens profited from this? It is not because the plaintiff does not know that at this point. Benefited from it in any way? I mean, not just profit, but any benefit from it? Well, they collected more money than they were entitled to collect. Walgreens has claimed that they remitted their portion, the extent they provide the water to the store, to Chicago. And then they also claim that, in a very brief affidavit, that the extent the vendors supply the water, that the vendors themselves remit the tax to the city of Chicago, but there's been no personal knowledge affidavit of that. But that really isn't, in our view, irrelevant to whether the voluntary payment doctrine applies. That's not an element. The exception is whether fraud has been committed or not. Are there any cases that you've found that apply the consumer fraud action to tax cases, improper tax cases? It depends on how you characterize it. Let me answer it this way. For example, NAVA had to do with the tax for the converter box coupon. In that case, the voluntary payment doctrine did not apply. In Flournoy, which was a case involving fees charged on phone service, you could arguably say as that attacks, the voluntary payment doctrine did not apply. So there are cases, in fact, I would submit the more recent jurisprudence, NAVI, Flournoy, the appellate court in this case, and one other which is eluding me at the moment, Ramirez. There's four appellate decisions, unanimous appellate decisions. That's 12 Illinois appellate justices finding that the fraud exception to the voluntary payment doctrine applied for an Illinois Consumer Fraud Act claim. Counsel, back to Justice Garmon's question. We rarely talk in terms of public policy, but given the complexity of the various municipal tax codes and the inevitable mistakes that could come with trying to comply with these tax codes, wouldn't the public policy ramifications of opening up the door to Consumer Fraud Act claims in that context be potentially very severe? Not here, and the reason is the Chicago bottled water tax was enacted in 2008. Retailers had been collecting the tax for seven to eight years by the time Mr. McIntosh's case came along. That's a contrast from what's going on with the short-lived Chicago soda sugar tax where there was massive confusion about what applied and what didn't. The tax was repealed. There were cases filed over that. We did not file such a case. In that situation, I think that's a good argument to say there's confusion, but the better argument to that defense of that case is not the voluntary payment doctrine. The defense of that case is there's been no fraud. That's just like the bottled water case, which is the coffee tax case. In that case, while the voluntary payment doctrine was discussed in dicta, the reason that case was dismissed was because in bottled water, the defendant had a legal opinion on the coffee tax statute saying, you should collect the maximum amount. You should tax it at the higher rate, and they produced that. The district court said, well, there really isn't any fraud or deception here because there was a good faith basis. That's not this case, or at least there's been no evidence provided in this case. Again, that's a merits issue. To get back to the tax point, we submit that the fact that it's a tax is irrelevant to this analysis. It just so happens that it's a Chicago bottled water tax that's being charged for, but it could be any other type of overcharge. For example, in our briefs, we gave the hypothetical of a situation where Walgreens deliberately miscalculates the sum of the items being purchased and overcharges everybody by, let's say, a nickel or a quarter or a dollar. The representation is everything's been handed correctly. Here's your receipt, but it hasn't been. Under the voluntary payment doctrine, adaptation that Walgreens submits should govern. In that case, the plaintiff will be out of luck because the plaintiff at that point in time had to independently add up all the numbers, him or herself, and determine it was right. If he or she walked out of the store, case was over. We submit that is not practical in this day and age in a consumer context. The voluntary payment doctrine comes back out of, I think it goes back to the English common law, frankly, but back in a time where people were contracting with one another. The idea was if two parties agreed on a transaction and party A invoiced party B pursuant to a contract and party B then paid, party B couldn't come back six months or a year later and say, wait a minute, I want my money back. Party B would have had to pay that under protest. That's where that originates from. There's always been exceptions to the voluntary payment doctrine. As was noted earlier, there's duress, there's necessity, and there's fraud. This is a tailor-made case for fraud. The fact that, again, it happens to have the label of being Chicago bottled water tax is irrelevant to our analysis. May I ask a question about a procedural piece here? I think you may have subtly answered it right then, but this was a motion to dismiss under 2619, but this case was barred by the voluntary payment doctrine. After the filing of that motion, does the burden shift to the plaintiff to show fraud address or address? I think to the extent that the plaintiff wishes to challenge that evidence, yes. So, for example, I believe I'm free to point out the infirmities in the Walgreens affidavit. For example, that the client did not have personal knowledge of what the vendors did, but I'm not able to stand up and say Walgreens itself on the bottled water at Chippewa stores did not pay the tax because that's undisputed or not indisputed. But the burden would be on the plaintiff in response to the motion to dismiss to show fraud, show one of the exceptions. Yes, to establish the exception has been pled. Yes, Your Honor. So when you say that fraud is the merits, it really is the response to the motion to dismiss. We have to engage the issue of whether you properly pled or argued fraud. Yes, that I pled it, but I don't have to prove it in order to defeat the affirmative matter being raised. And when Walgreens talks about no deceit is taking place, that's a merits argument. The issue is whether or not the deceit or the fraud of the representation has been pled, and it has in this case. And it's a potential fraud case any time a retailer imposes or collects an improper tax. It depends. Like in the example I gave before, the Bartolotta case, the situation where you have an ambiguous statute, for example, and the retailer submits evidence that they rely upon legal counsel and said we erred on the side of caution. I don't think there's a deception in that situation or fraud. And so I don't think the plaintiff necessarily has a valid claim. But again, I don't think that's a voluntary payment doctrine defense case. I think that's a merits defense case. Effectively, what Walgreens is advocating for is a return to the days of caveat in tort. If this court were to adopt a rule that said the voluntary payment doctrine can apply even when fraud is alleged, consumers would have to be on super hyper alert. Every consumer transaction would have to be challenged at the point of sale for the plaintiff to ever maintain a fraud case. The fact that it just so happens to be a sales tax does not alter that. The cases that were cited below and, in fact, the case that the trial court relied upon, Leszczynski, occurred in the 1970s when there were challenges and a sorting of the rules, so to speak, over the new Illinois sales tax regime. And in those cases, fraud was not alleged, but refunds were sought. And the reason that those cases don't apply here and while it's a different situation is that, one, there's a tax protest act to go through to try to recover taxes paid to the state. There is no such regime for Chicago bottled water tax. So in this situation, there is nowhere else for the plaintiff to go. There's not an option for the plaintiff to call the city and try to claw back the money that he paid to Walgreens and that Walgreens supposedly paid to the city. There's no ability to do that. The second thing that was going on in the tax refund cases, and in particular what happened in Leszczynski, was that it had to do with non-reimbursable coupons and whether a sales tax should be applied to those. And in 1980, this court, in a case called Saxon, rooted out the section of the law that said you should collect taxes on that. So what happened was there was an eight-year period, actually a ten-year period, where grocery stores and retailers were collecting a tax lawfully. That's what the law was. And then the court said, well, that portion is unconstitutional. And consumers then said, we want the money, we want to recoup the money from all ten years back that happened. They didn't file a fraud case. There was no fraud allegation. And I think the reason was simple. There was no fraud there. At the time the retailers charged those sales taxes, they believed they were lawfully entitled to do that and did so in the law change. That's a great point. Specifically, can you tell us what is the misrepresentation that you have led here? The misrepresentation is the charging and collecting of the Chicago Bottle of Water tax. It's that conduct by bringing up the purchase and applying the taxes and applying a tax that doesn't apply. There's an inference to be drawn from that. In the case that you were speaking of before, you were talking about the state of mind of the retailer who was collecting the tax, and at the time it was constitutional and so they thought they were doing the right thing. So there's some state of mind piece in that case. What have you pled here in the state of mind of Walgreens? We pled that Walgreens knowingly did it because we know that they have rather large resources in the business of charging sales taxes on all their products, and the sales tax has been in effect since 2008. So we think it's a reasonable inference to be drawn that they had knowledge of that. They knowingly charged the tax for sure. Can we say they know? In fact, that's a good point. We don't have to, by the way, allege that they knowingly intended to deceive the plaintiff. We have to allege they knowingly intended the act, and the act was charging the shadow bottle of water tax. That's the deception. Correct, in this situation, yes, Your Honor. One other question. We've talked about tax remittance, clawing back the tax. This is not an action against the city of Chicago. You're not asking for the money back from the city of Chicago? Correct. You're asking the money to come from Walgreens after they've remitted the money to the city of Chicago? Yes, to the extent that's happened. Knowingly charging the tax, that's interesting, right? We're in a fact-pleading state, right? Couldn't that as easily be inferred as mistake versus fraud, knowingly charging the tax? They would agree they made a mistake. When you were asked the question regarding where this tax money went, you said, well, that's an issue for Discover. If they want to show us that that tax money went back to the city, they can show us that, right? So we still have to have some allegations of fraud. And you're saying, well, an inference can be drawn by the fact that they charged the tax. They'll admit they charged the tax. You're just saying it's a mistake. Back to the complaint, what specific factual allegations of fraud are present? The factual allegation is a representation that your Chicago bottled water tax is due and owing when it's not. Now, that's deceptive conduct. Now, their defense to that can be they made a mistake. By the way, there's no evidence of that. No one has put in any evidence that's what happened. And there's no evidence that they kept the money either, right? Don't know. In fact, for our purposes, it doesn't matter. Let's suppose that they remitted every penny to the city of Chicago, but they weren't entitled to charge it. There's two options. Either the plaintiff has no remedy and the city gets enriched by sort of a non-legislative tax increase, or Walgreens goes and gets the money back to the plaintiffs. My original question then regarding the public policy in the state of Illinois, you seem to be saying, well, in this case, it's been going on for eight years. If we decide that a case can go forward under the Illinois Consumer Fraud Act for any type of mistake that is made, if there is some inference of fraud, right, it's going to go a lot further than this particular case. And then we're back to, again, a public policy argument that there's mistakes. These tax ordinances are all over the place. I would imagine there's a lot of mistakes going on. So in every one of those situations where mistake or fraud could be inferred, isn't there going to be a ton of cases filed? I'm not sure there will be a ton of cases filed because, again, it has to be a situation where someone was deceived, and I guess it really has to be worth the money for someone to pursue the case. This is a fairly high-volume item that's remitted. With your allegations, I can't think of an area where pleading the way you pled, that anybody who has that much knowledge that they just did it. I can't see the difference between mistake and fraud there in the pleading. As great an inference of mistake as there is an inference of fraud, and we're in a fat-pleading state. So I can't see where others couldn't do the same thing in every single situation where a tax was charged by mistake that a fraud pleading couldn't be pled under your analysis. I think others could do that and try to plead around the voluntary payment doctrine. But if, let's say, a mistake is a tougher line to draw as to why to begin, an innocent misrepresentation is actionable. So in a scenario where, let's say it was a mistake, let's just accept that, that it's a mistake and the money goes to wherever, but it wasn't supposed to be charged, then you have the public policy argument, should the money remain with the taxing authority or should it go back to consumers? We would submit it should go back to consumers, but at a minimum, we would submit that the voluntary payment doctrine should knock them out of court at the get-go, that they should at least get the chance to make the attempt. Let's see the facts and let's see what happened. And by the way, I did not mean to suggest that Royal Range has been charging the bottled water tax erroneously since 2008, just that the bottled water tax was enacted in 2008. I don't know how far back it extends. I understand. Okay. Your time has expired. Do you want to wrap it up? I would just ask that the reason stated that the court affirm the appellate court. Thank you. Thank you. Reply. Yes, Your Honors. Thank you. I have several points to make. First, let me just touch again on the Gurney case. And I had a chance to refresh my recollection of my apologies. That case turned on the duress compulsion exception because of the nature of the medical device. And there's no allegation of duress in this case. And the plaintiff could go to any store in the city of Chicago and buy a bottle of water if they didn't want to pay the five-cent tax. Let me say a few words about the standards for a well-pleaded allegation with regard to knowledge or intent or deceitfulness. And we walk through this in our reply brief on pages 13 and 14. But this Court's cases and other cases from Illinois make clear that mere assertions, and that's all this is, is a conclusionary assertion, that a party knowingly did an act or did it intentionally or with a deceitful intent is not sufficient to satisfy the well-pleaded complaint requirement. They have to allege facts to actually support that. And here there are none. And we talked a little bit about the remittance issue and what happens when the tax collector, the retailer, remits the tax to the taxing authority of the state or city. And this Court's cases and other cases throughout Illinois make clear that once remittance has occurred, that precludes any claim for a refund unless the legislature has specifically provided a mechanism for obtaining that. And ICFA cannot be characterized as that type of a tax refund enactment by the legislature. The cases that make that clear include Frond, Haggerty, Adams, and Luzinski. There is a lot of authority for the proposition that the remittance is, in fact, important. And it is relevant to the claim that there was some sort of deceptive conduct because you have to look at what is alleged as deception. It is the mere fact of indicating on the receipt, you know, Chicago bottled water tax, five cents. What that says is Walgreens is collecting five cent tax on the item you purchased. That is a factual, accurate statement. It is not a guarantee that all of the legal research has been done and you can rely on the legal opinion of the retailer. All of this Court's Voluntary Payment Doctrine cases make clear that one of the primary objectives of the Voluntary Payment Doctrine is to ensure that all parties, including consumers, have an incentive to know what their legal obligations are, including the taxes that they are owed. And the tax that is at issue here is very clearly imposed on consumers, not retailers. Retailers have to collect it. And all of the ways in which Walgreens here remitted the tax are specifically the ways that are provided for in the city's ordinance. And this is in 3-43-50 under the collection heading of the city's ordinance. It tells retailers that when there's a wholesaler you purchased the bottled water from, the wholesaler pays and you have to pay the wholesaler. And if there's no wholesaler, then you collect the tax and pay it directly to the taxing authority. And the affidavit that was put in here under 2-6-19 makes clear that's exactly what happened here and it was never challenged below. There was no allegation to the contrary. There was no effort to try to rebut it. And we think that's sufficient, again, to preclude a voluntary payment doctrine claim, or excuse me, a claim for a tax refund here under the voluntary payment doctrine. My friend made reference to the Flournoy case. And I think that's an interesting case because I think it shows how an allegation of fraud can create an exception to the voluntary payment doctrine. But the fraud that was alleged in Flournoy, and that's a case that involved not taxes, but the imposition of fees by a telephone company. And there was a fee that was called an initiation fee. And that fee was disclosed on the bills and paid. And it wasn't the disclosure of the fee that created the allegation of fraud fit within the fraud exception. It was the fact that it was alleged plausibly that the telephone company was intentionally cutting off calls multiple times during each call from the prison to require that initiation fee be paid multiple times for each call. And so there was plausible allegations of fraud, but it wasn't the simple fraud allegation that we have here, which is you told me what tax you were collecting. And then you accurately collected it and remitted it. That can't be a deceptive practice if the voluntary payment doctrine is going to have continued effect in these important tax collection cases. The type of consequences that would follow if instead of the longstanding voluntary payment doctrine, we replaced it with the type of standard that was adopted below by the Court of Appeal, which really does amount to per se liability. Every time a retailer informs the taxpayer that it's collecting a tax that happens to be wrong, that would swallow the rule and it would turn ICFA into the preferred and I would suggest only mechanism by which plaintiffs are going to sue to obtain tax refunds going forward. And that brings with it, you know, attempts at punitive damages, which also are alleged in the complaint here. You know, attorneys' fees, all these other things, which create perverse and difficult incentives on the part of retailers who are trying to comply with complicated taxing regimes. And this is why this Court has always recognized that the proper supervision of those taxing regimes are by the legislature and by the taxing authorities that promulgate those ordinances and not by civil litigation of this nature. Again, I think it's important to recognize that what's happened in this case is the same allegations that this Court and other courts have seen dozens of times over many, many decades. And the only thing that's different is they put the label of consumer fraud onto the same factual allegations. But that label is not what controls. What controls are what the facts are that are alleged. And under the voluntary payment doctrine, it's not the label of the illegality that matters. It's whether the payment was voluntary. And that's what I think my friend on the other side wants to not talk about. All of this Court's cases make clear that illegality alone is not enough. It's presumed. And as the Jenkins Court said in rejecting the argument that all ICFA claims are immune from the voluntary payment doctrine, a mere restatement of illegality isn't sufficient to avoid the voluntary payment doctrine. What each of those exceptions, fraud, duress, compulsion, misstatement of fact, go to, are those circumstances in which it's appropriate to relieve the consumer or the taxpayer of their obligation to speak up if they think a tax is not appropriate. So that especially in this context of these fleeting commercial transactions like this, trying to go back months later and recreate what happened here. The plaintiff has no receipts, didn't keep them. If a purchase is made with cash, they'll likely be impossible to try to recreate that. The law creates incentives to avoid unnecessary class action lawsuits like this and to ensure that the parties have an opportunity to resolve it. If in real time a consumer looked at the receipt and said, I'm not sure this tax is appropriate, the retailer can do something about it and can resolve it. And there is a mechanism by which tax refunds are available for the bottled water tax and it's set forth in the city's ordinance 3-4-100. And it serves as an alternative to this type of claim. Now, it may be the case that the plaintiff wouldn't be eligible for relief because he never asked for a refund from the retailer. And the retailer is the one that gets to obtain a refund from the taxing authority when it's refunded the money to a consumer. But there was a mechanism in place for the plaintiff to get a refund for a mistakenly collected taxes. He just preferred a class action with attorney's fees and punitive damages as an alternative to that, and that's what the law does not allow. And the amici brief that was put in, I think it provides a great illustration of the types of harms that would occur if the rule proposed below were adopted. And the example of Chicago's sweetened beverage tax and the massive amount of litigation that's fallen out of that, where no one really knows exactly what is required and ultimately they have to withdraw the tax, illustrates those kinds of problems. If the court has no questions. Yes. Your argument, you said voluntary payment was with full knowledge, and you said truly voluntary. So in this case, for voluntary payment documents, apply what did the consumer do with full knowledge and truly voluntary, by just receiving the receipt and paying? Right. So the allegations in this complaint, and I think this is illustrated. Your Honor, let me point to two things very quickly. One is, sorry, I've got the wrong thing over here. It's over here. The allegation of the complaint is that Walgreens reported to the plaintiff that the total for the bill included the five cent tax. And the court below, in talking about the allegations that were sufficient, stated that Walgreens informed plaintiff that the tax was being imposed on the items. That's what's sufficient. Each of this Court's cases, and I would refer you to the front case, Luzinski, Isberian, and Harris. Each of those has a discussion about what type of information needs to be conveyed. And several of them involve receipts. Some involve other types of forms. But as long as a person would have enough information to raise an objection, if they knew what the law was, then that's all that's required. And, you know, the voluntary payment doctrine is a doctrine that deals with mistakes of law, where the party knows the facts. And, you know, the ICFA and fraud cases deal with misrepresentations of material facts, not mistakes of law. That's another reason why this is a very poor fit. A party may not know the law or may get the law wrong, but that doesn't mean they've committed a fraud. Thank you. Case number 123-626, McIntosh v. Walgreens, will be taken under advisement as agenda number two. Mr. Salmons, Mr. Lawhorn, Nick Lawhorn, thank you for your arguments this morning. You are excused.